584 So.2d 1248 (1991)
Carolyn Cornelius SWEENEY, Appellant,
v.
CITY OF SHREVEPORT, et al., Appellees.
No. 22680-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1991.
Writ Denied November 15, 1991.
*1249 Rountree, Cox, Guin & Blackman by Gordon E. Rountree, Shreveport, for plaintiff-appellant.
Mayer, Smith & Roberts by Steven E. Soileau, Shreveport, for defendant-appellee Vanguard-Underwriters Ins. Co.
Terri Anderson-Scott, Shreveport, for defendant-appellee City of Shreveport.
Before NORRIS, LINDSAY and HIGHTOWER, JJ.
NORRIS, Judge.
The plaintiff, Carolyn Cornelius Sweeney, filed suit against defendants, the City of Shreveport and Vanguard-Underwriters Insurance Company, for damages resulting from the demolition of her house at 3418 Stonewall Street in Shreveport; by supplemental petition she also sought penalties and attorney fees from Vanguard for its failure to pay timely. Vanguard moved for summary judgment which was granted and signed August 6, 1990. Mrs. Sweeney now appeals; we affirm.

Facts
On August 11, 1983, Mrs. Sweeney acquired a house on the subject property, 3418 Stonewall Street, lots 16 and 17 of Hawthorne Heights Subdivision. James Pearce, Codes Enforcement Inspector for the Shreveport Department of Public Works, received complaints in early 1986 as to the condition of the house and its possible use as a "drug house." On February 12, 1986, Pearce went out and inspected Mrs. Sweeney's house. It was vacant, open and in an overall dilapidated condition.
The house had no visible municipal number; Pearce guessed the address by counting from the nearest apparent municipal number. He also counted lots from the intersection of Stonewall and Mertis; the house was four lots west of the intersection. He then went to the Caddo Parish plat books and incorrectly traced the ownership to a Mr. Walker, whose property (3420 Stonewall St., lot 14) was actually seven lots west of the intersection. In fact, there was no house at 3420 Stonewall and it is doubtful whether that address was an existing, valid municipal number at all.
The Shreveport Housing and Property Standards Code, Section 19-13, provides that notice shall be served on a property owner to correct code violations. If the owner fails to comply within 30 days of receipt of the notice, he is ordered to appear before the Property Standards Board. Section 19-44 provides that if the owner still refuses or fails to comply, the administrator, at the direction of the mayor, may proceed with demolition after serving notice of impending demolition.
In the instant case, because of Pearce's erroneous information, all notices of condemnation and demolition of Mrs. Sweeney's house were sent to Mr. Walker by mistake. Mr. Walker accepted only one of *1250 the certified letters and never notified the Department of its error.
On August 23, 1988, finding no progress on this case, Pearce decided that the city should proceed with demolition. Mayor John Hussey signed a letter, pursuant to Pearce's paperwork, ordering demolition of the house at 3420 Stonewall. The wrecking company identified the house by the street name and a picture. Mrs. Sweeney's house, located at No. 3418, was actually demolished.
Mr. Pearce and his supervisor, Mr. DeBois, stated in depositions and affidavits that they intended to demolish the house at 3418 Stonewall and that it was, in fact, the house demolished. They further stated that demolition was accomplished through the city's enforcement of its housing code. They conceded, however, that they erred in obtaining the wrong address which resulted in notification to the wrong property owner. The city, by answers to interrogatories on December 1, 1989, made these same admissions.
Mrs. Sweeney complains that she never received any notice until after the house was demolished; she claims she was thereby denied the opportunity to restore the property prior to its demolition. A certified appraiser estimated the property value of the structure to be approximately $4,000 to $5,000.
Mrs. Sweeney's house was insured by Vanguard. The policy provides:
A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
(1) Ordinance or law, meaning enforcement of any ordinance or law regulating the use, construction, repair or demolition of property unless specifically provided under this policy. R.p. 46 (emphasis added).

Procedural history
Sweeney filed suit August 18, 1989 against the City of Shreveport and Vanguard. Vanguard filed a cross claim against the City of Shreveport claiming indemnification and contribution from the city; it also filed a motion for summary judgment on the grounds that the city intended to and did demolish 3418 Stonewall St. pursuant to enforcement of its local ordinance; thus, the insurer should be held not liable by virtue of its policy exclusion.
In reasons for judgment the court noted the city's admission that though it intended to condemn the right house, notice was sent to the wrong owner. The court found that despite the city's mistakes, Sweeney's house was demolished pursuant to a city ordinance. Thus, the exclusion applies, and summary judgment is appropriate.
On appeal, Sweeney initially argues there was a genuine issue of material fact as to whether the city intended to demolish 3418 or 3420 Stonewall. She also argues that the exclusion is ambiguous as to whether it covers an illegal enforcement of an ordinance. Finally, she argues that the exclusion is against public policy. Vanguard counters that the depositions, affidavits and interrogatories leave no doubt but that the city intended to destroy 3418 Stonewall, that the policy excludes acts of the city to enforce an ordinance, and that it is not against public policy for an insurer to exclude good faith enforcement of a condemnation ordinance, even if errors are made.

Genuine issue of material fact
Summary judgment is proper if there is no genuine issue of material fact and judgment may be entered as a matter of law. La.C.C.P. art. 966; State, through Dept. of Hwys v. City of Pineville, 403 So.2d 49 (La.1981). At oral argument, counsel for Mrs. Sweeney conceded that although the city's paperwork erroneously ordered the condemnation of 3420 Stonewall St., the authorized city officials at all times intended to condemn her house at 3418 Stonewall St. and that this house was actually destroyed. The depositions of Pearce and DeBois made this clear. This issue presents no disputed issue of material fact. The assignment lacks merit.

*1251 Matter of law

Summary judgment is only proper if it may be entered as a matter of law. State, etc. v. City of Pineville, supra. Mrs. Sweeney contends that to apply the exclusion in this instance is inappropriate because the enforcement was illegal. She asserts two grounds. First, she argues that the wording of the exclusion is ambiguous as to whether it applies to a legal or an illegal enforcement of an ordinance and that any ambiguity must be construed against the insurance carrier. Credeur v. Luke, 368 So.2d 1030 (La.1979).
While it is true that ambiguity in a policy is to be construed against the insurer, it is also true that an insurance policy is a contract which constitutes the law between the parties. Courts have no authority to alter terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language. La.C.C. art. 2046; Pareti v. Sentry Indem. Co., 536 So.2d 417 (La.1988).
A plain reading of the exclusion gives no indication that the procedure used to enforce the ordinance must be flawless in every respect. It simply states that the policy does not cover loss caused directly or indirectly by enforcement of any ordinance regulating the demolition of property. The record is completely clear that Mrs. Sweeney's house was condemned and demolished pursuant to the enforcement of an ordinance. By its plain terms, the exclusion applies.
The supreme court of another jurisdiction considered the same issue many years ago in Hawaii Land Co. v. Line Fire Ins. Co., 15 Haw. 164 (1900). There, the court reasoned:
Nothing is said about the order being lawful, and it could not have been the intention of the insurer in inserting this clause in the policy to make its exemption from liability depend on the solution of nice questions as to the lawfulness of the orders of the civil authorities. * * * [I]t is sufficient when, as here, the civil authority, the Board of Health, has the power under the statute to destroy buildings when it is necessary to do this for the public health, and in the particular case purports to act in its official capacity and does act in good faith and within the apparent scope of its powers. Id., at 168.
This reasoning is persuasive. The policy is not ambiguous and the exclusion applies to the instant condemnation. Mrs. Sweeney's argument lacks merit.
Second, Mrs. Sweeney argues that policy exclusions are unenforceable if they are against public policy or contrary to the terms and policy of a statute. See Pareti v. Sentry Indem. Co., supra.
Admittedly, Mrs. Sweeney did not receive notice that her property was to be demolished; thus her claim against the city may have merit. However, the exclusion provides that any loss directly or indirectly resulting from enforcement of an ordinance is excluded regardless of any contributing causes. It may be true that the negligence of city employees resulted in Mrs. Sweeney not getting notice and that this negligence contributed to the demolition of the house; however, the exclusion by its own terms still applies.
Mrs. Sweeney's propositions are valid but they do not apply to this case. True, in limited circumstances policy exclusions may be held unenforceable if they are against public policy. FDIC v. National Union Fire Ins. Co., 630 F.Supp. 1149 (W.D.La.1986). However, she has not enunciated the public policy, if any, that is violated by the instant exclusion. True, contractual provisions contrary to the terms and policy of a statute are illegal and unenforceable. Connolly v. Sewer Pipe Co., 184 U.S. 540, 22 S.Ct. 431, 46 L.Ed. 679 (1902). Once again, however, she has not enlightened us with the statute that would allegedly render the instant exclusion unenforceable. In short, we are aware of no statute, jurisprudence or vague "public policy" that would prohibit the enforcement of this exclusion on grounds that the public entity was negligent in enforcing an ordinance.
*1252 Various cases mentioned by Vanguard, such as Bankers Fire & Marine Ins. Co. v. Bukacek, 271 Ala. 182, 123 So.2d 157, 84 A.L.R.2d 672 (1960), and American Central Ins. Co. v. Stearns Lumber Co., 145 Ky. 255, 140 S.W. 148 (1911), are actually more apposite. These cases illustrate governmental actions (destroying illegal stills or quelling riots) that were such an abuse of discretion as to amount to bad faith. In those instances the courts could not dignify the governmental action as enforcement of an ordinance regulating the demolition of property, and the policy exclusion would not apply. These cases are thus distinguished.
We would note that the city officials in the instant case were at all times acting within their official capacity and in good faith in their attempt to enforce the housing code. Their uncontradicted statements undermine any claim of intentional or bad faith conduct in listing the wrong property description and wrong owner or failing to follow the provisions of the Housing Code. Errors were made in reckoning the municipal number and description of Mrs. Sweeney's badly dilapidated house, with the result that the required notices were sent to the wrong property owner. Despite these good faith errors, the city's action against the substandard home was within the scope of authority provided by the Housing Code.
The exclusion provides that enforcement of the ordinance need not be the only cause of the demolition. Despite the city's negligence, the condemnation was effectuated in good faith and within the scope of the City's Codal authority to condemn substandard property. The trial court did not err in concluding that the policy exclusion is applicable. The judgment is affirmed at appellant's costs.
AFFIRMED.